Argued and submitted September 19, affirmed December 27, 1995

In the Matter of Raymond Thai/Schmolling,
a Child.

STATE ex rel JUVENILE DEPARTMENT
OF WASHINGTON COUNTY,
*Respondent,*

*v.*

Raymond THAI/SCHMOLLING,
*Appellant.*

(J94-0299; CA A86085)

908 P2d 844

Susan D. Isaacs argued the cause and filed the brief for appellant.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

■ Child appeals from an order finding him within the juvenile court's jurisdiction for conduct which, if committed by an adult, would constitute sexual abuse in the first degree. ORS 163.427. Child assigns as error the denial of his motion to suppress incriminating statements. We review a juvenile court's suppression ruling *de novo*, giving some deference to credibility determinations. ORS 419A.200(5); ORS 19.125(3); *State ex rel Juv. Dept. v. Fikes*, 116 Or App 618, 620, 624, 842 P2d 807 (1992); *State ex rel Juv. Dept. v. Qutub*, 75 Or App 298, 300, 706 P2d 962, *rev den* 300 Or 332 (1985). We affirm.

On June 3, 1994, child's younger sister, then seven years old, told a CARES[1] physician and a caseworker at Emanuel Hospital that child had committed sexual acts on her. Child was 14 years old and enrolled in junior high school at the time. That same day, child's mother called him at school because she suspected that an investigator from Children's Services Division would try to interview him there, and was worried that he did not understand his rights. Without informing child of his sister's allegations, she told him that he did not have to answer any questions, that he had a right to an attorney, "and he's to request it."

Soon after the mother's call, Deputy Inhofer arrived in plainclothes at child's school to investigate the allegations. Vice-principal Zickfoose brought child to the principal's office, which was vacant. Only child and the deputy were present, and the door was closed. The deputy introduced himself, said he was there to talk about "some things" and advised child of his *Miranda*[2] rights. When asked if he understood those rights, child said, "Yeah, sure," and signed an "advisal of rights form" at the deputy's request.

When the deputy said he wished to discuss child's sister, child interjected that his mother had called the school to tell him that he need not answer any questions unless he wanted to. Child then said, "I don't want to answer any questions." The deputy arrested child for sexual abuse in the

---

[1] Child Abuse Response and Evaluation Services.

[2] *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

first degree. When child asked, "Why?", the deputy recited the sister's allegations. Child said that "they were not true and that only his brother Michael was the one that did that." Without reissuing *Miranda* warnings, the deputy continued questioning child, who eventually admitted touching his sister's vaginal area. The entire session lasted about half an hour.

The juvenile court denied child's motion to suppress his statements, relying on *State v. Smith*, 310 Or 1, 791 P2d 836 (1990), for the proposition that a criminal defendant "is entitled to pick and choose what he wished to talk about." On appeal, child argues that, because he asserted his right to remain silent, the deputy was required to readvise him of his *Miranda* rights before resuming interrogation. The state contends that no new *Miranda* warnings were required because child, not the deputy, initiated further discussion. Child also argues that his statements were involuntary, but the state claims that issue was not preserved below.[3]

Under the Fifth and Fourteenth Amendments to the United States Constitution, statements obtained during "custodial interrogation" are not admissible in the state's case-in-chief unless police first warn the accused of his right to remain silent and his right to counsel. *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).[4] The Oregon Constitution does not require warnings more detailed than those of *Miranda*, which are adequate to safeguard an accused's Article I, section 12,[5] right against self-incrimination. *State v. Sparklin*, 296 Or 85, 89, 672 P2d 1182 (1983); *State v. Rowe*, 79 Or App 801, 804, 720 P2d 765, *rev den* 302 Or 86 (1986).

Before deciding whether *Miranda* warnings are required, we must first determine whether the accused was

[3] *See* n 9 below.

[4] In *Miranda*, the U.S. Supreme Court required that,

"prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 US at 444.

[5] Article I, section 12, of the Oregon Constitution provides:

"No person shall be put in jeopardy twice for the same offence (*sic*), nor be compelled in any criminal prosecution to testify against himself."

"in custody." *Smith*, 310 Or at 7. The parties apparently agree that child was "in custody" when questioned by the deputy. The state did not contend otherwise either below or on appeal.[6] We assume, without deciding, therefore, that the setting was "custodial" and *Miranda* warnings were required.[7]

■■ Once the accused invokes his right to counsel, police must cease all interrogation until an attorney is provided, unless "the accused himself initiates further communication, exchanges, or conversations[.]" *Edwards v. Arizona*, 451 US 477, 484-85, 101 S Ct 1880, 68 L Ed 2d 378 (1981); *State v. Kell*, 303 Or 89, 95, 734 P2d 334 (1987). When the accused invokes only his right against self-incrimination, police may reinitiate contact after a reasonable time, give new *Miranda* warnings and obtain a valid waiver. *Michigan v. Mosley*, 423 US 96, 104-06, 96 S Ct 321, 46 L Ed 2d 313 (1975); *Rowe*, 79 Or App at 805-06. Renewed warnings are not required, however, if the accused himself reopens the dialogue with police.

■ An accused initiates communication by making a statement that "evince[s] a willingness and a desire for a generalized discussion about the investigation[.]" *Oregon v. Bradshaw*, 462 US 1039, 1045-46, 103 S Ct 2830, 77 L Ed 2d 405 (1983) (asking "Well, what is going to happen to me now?" initiated communication). *But see State v. Crawford*, 73 Or App 53, 58-59, 698 P2d 40 (1985) (inquiring about "the charge itself * * * what it carried and so forth" did not show willingness to discuss the investigation). However, making a "necessary inquiry arising out the incidents of the custodial relationship," such as asking for a drink of water or use of a telephone, does not constitute reinitiation of discussion. *Bradshaw*, 462 US at 1045-46.

---

[6] *But see State ex rel Juv. Dept. v. Loredo*, 125 Or App 390, 865 P2d 1312 (1993) (police questioning juvenile in principal's office not "compelling" setting); *State ex rel Juv. Dept. v. Killitz*, 59 Or App 720, 651 P2d 1382 (1982) (police interrogation of junior high student in principal's office was "custodial"); *State ex rel Juv. Dept. v. Gage*, 49 Or App 599, 624 P2d 1076 (1980) (principal and vice-principal questioning student in school office about theft not "custodial").

[7] We also assume that child was subject to "interrogation," which means either direct questioning or police conduct that will likely elicit an incriminating response. *Rhode Island v. Innis*, 446 US 291, 100 S Ct 1682, 64 L Ed 2d 297 (1980); *State v. Knoch*, 86 Or App 15, 19, 738 P2d 979 (1987). Here, the deputy directly questioned child about his sister's allegations of sexual abuse.

■ In *State v. Barmon*, 67 Or App 369, 679 P2d 888, *rev den* 297 Or 227 (1984), the accused did not express a desire for a generalized discussion by asking, "Do I have a right to know what I'm being charged with?" and exclaiming, "I didn't steal anything" in response to the officer's recitation of charges. 67 Or App at 377. The same is true here. Child's inquiry about the reason for his arrest was merely incidental to that arrest. Also, as in *Barmon*, we do not consider child's meager attempt to exculpate himself sufficient evidence of a "willingness and desire for a generalized discussion."[8] Therefore, after child invoked his right to silence, the deputy was required under *Rowe* and *Mosley* to wait a reasonable time and issue new *Miranda* warnings before resuming interrogation. Because he did neither, it was error to admit child's statements.

■ On *de novo* review, however, that error is harmless if we find other evidence demonstrating beyond a reasonable doubt that child committed the acts alleged in the petition. *See State ex rel Juv. Dept. v. Taylor*, 119 Or App 276, 278, 850 P2d 390, *rev den* 317 Or 583 (1993) (erroneous admission of hearsay statements was harmless because child's properly admitted confession supported a finding of jurisdiction).[9]

The petition alleges, and the juvenile court ruled, that child committed acts amounting to sexual abuse in the first degree. ORS 163.427.[10] To affirm, we must find beyond a

---

[8] Demanding a reason for arrest and offering an explanation may, in other situations, amount to reinitiation of discussion. *See State v. Houston*, 110 Or App 19, 23, 821 P2d 1093 (1991); *State v. Knoch*, 86 Or App 15, 17, 20, 738 P2d 979 (1987) (asking officer, "Can I ask you exactly what I was doing that got you so hot after me?" and interjecting several comments showed a willingness to discuss arrest). However, child's bare statement alone is not sufficiently similar to the exchanges in *Houston* and *Knoch* to be characterized as a desire to reopen the dialogue.

[9] Child also contends that his statements were involuntary. Even assuming that child is correct, the same harmless error analysis applies. The erroneous admission of involuntary statements is no longer considered "structural" error under the Fourteenth Amendment, and thus is properly susceptible to a harmless error inquiry. *Arizona v. Fulminante*, 499 US 279, 310, 111 S Ct 1246, 113 L Ed 2d 302 (1991).

[10] ORS 163.427(1) provides, in part:

"A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

reasonable doubt that child touched his sister's "sexual or other intimate parts," that he did so for the purpose of sexual arousal or gratification, and that she was "less than 14 years of age" at the time.[11] In finding the requisite purpose, the juvenile court relied solely on child's admissions as implying "sexual connotation." Because it was error to admit those statements, we examine the sufficiency of the sister's allegations standing alone.

Child's sister did not testify. The state instead offered her out-of-court declarations through the testimony of a physician who examined her, and a videotaped interview by a caseworker. The juvenile court admitted these declarations as substantive evidence under the "medical statements" exception to the hearsay rule. OEC 803(4).[12] Because child does not challenge that ruling on appeal, we assume without deciding that the sister's declarations were properly admitted.

According to the physician, the sister claimed that child had touched her "anal area." On videotape, she told the caseworker that child had opened her vagina with his fingers "to see if I have any hair on my private," touched her anal area with his hands and pressed his penis against both her vaginal and anal areas. Child was 14-years-old at the time. On *de novo* review of the entire record, we find this sufficient

---

"(A) The victim is less than 14 years of age[.]"

ORS 163.305(6) provides:

" 'Sexual contact' means any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

[11] There was no dispute as to this last element. The record indicates the sister's date of birth, which shows that she was seven years old at the time of her interview, and thus "less than 14 years of age" at the time of abuse.

[12] OEC 803 provides, in part:

"The following are not excluded [by the rule against hearsay], even though the declarant is available as a witness:

"* * * * *

"(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause of external source thereof in so far as reasonably pertinent to diagnosis or treatment."

evidence that child touched his sister's "sexual or other intimate parts" and conclude that he did so for the purpose of arousing or gratifying his sexual desire.

Affirmed.