852 P.2d 414

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JV–501010.**

**No. 1 CA–JV 92–0041.**

Court of Appeals of Arizona,
Division 1, Department A.

May 25, 1993.

■■■■■■■■■■■■■■■

---

Richard M. Romley, Maricopa County Atty. by Diane E.W. Gunnels, Deputy County Atty., Phoenix, for appellee.

John G. Schaus, Mesa, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

The juvenile appeals from an adjudication of delinquency for two counts of burglary and three counts of theft. He argues that the juvenile court erred by failing to suppress certain incriminating statements he made to the investigating officer. Because the statements may have been induced by a promise or threat, we remand this case to the juvenile court for additional findings.

On a morning in August of 1991, a deputy sheriff was investigating reports that several motorcycles had been stolen the previous night. A neighbor of the juvenile advised the deputy that the juvenile had told him the night before that he planned to steal motorcycles.

The deputy went to the juvenile's home and spoke to the juvenile and his mother. According to the juvenile, the officer told him that other individuals involved had implicated the juvenile in the thefts, and the officer wanted to get the juvenile's side of the story. The juvenile testified that the officer said, "since he already knew pretty much all about it, and he wanted to get my side of the story, it was either I told him the truth or he could take me down and he'd try to get the truth out down in jail or whatever." The juvenile's mother corroborated what the juvenile said. The juvenile admitted to the officer that he and two of his friends had stolen the motorcycles and hidden them in the desert.

It is undisputed that at this point in time the officer had not talked to accomplices who had implicated the juvenile. The officer denied that he told the juvenile about talking to the accomplices or that he, the officer, had said anything about the juvenile going to jail.

The juvenile agreed to show the officer where the motorcycles were located. The officer handcuffed the juvenile and placed him in the police car. After the juvenile directed the officer to the location of the motorcycles, the officer returned him home. The officer never gave the juvenile *Miranda* warnings.

The juvenile moved to suppress the statements he had made to the officer. Following a voluntariness hearing, the juvenile commissioner ruled that statements made by the juvenile before he was placed in the police car were admissible because until that point the juvenile was not in custody and *Miranda* warnings were unnecessary. The commissioner suppressed statements made after the juvenile was handcuffed and placed in the police car because the juvenile was then in custody and had not been given his *Miranda* warnings.

■■ The juvenile contends that the statements he made before being placed in the police car should have been suppressed. He argues that juveniles must be advised of their right to remain silent before questioning even if they are not in custody. He takes the position that Rule 18, Arizona Rules of Procedure for the Juvenile Court, provides greater protection to juveniles than does *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Rule 18 provides:

RULE 18. STATEMENT OF A CHILD

No extra-judicial statement to a peace officer or court officer by the child shall be admitted into evidence in juvenile court over objection unless the person offering the statement demonstrates to the satisfaction of the court that: The statement was voluntary and before making the statement the child was informed and intelligently comprehended that he need not make a statement, that any statement made might be used in a court proceeding, and that he had a right to consult with counsel prior to making a statement and during the taking of the statement, and that, if he or his parents, guardian or custodian could not afford

an attorney, the court would appoint one for him prior to any questioning.

Division Two of this court has previously addressed this issue in *State v. Berlat,* 136 Ariz. 488, 666 P.2d 1097 (App.1983). There the court held that Rule 18 "should not be construed to exclude statements by juveniles where *Miranda* would not require warnings." *Id.* at 489, 666 P.2d at 1098. We agree with the holding in *Berlat.* In the present case, because the juvenile was not in custody when he was questioned at his home, there was no violation of *Miranda,* and thus the officer was not obligated to give the Rule 18 warnings.

The question whether the juvenile's statement was voluntary is a different matter. Confessions are presumed to be involuntary, and the state has the burden of proving by a preponderance of the evidence that a confession was voluntary. *State v. Amaya–Ruiz,* 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990). "Under Rule 18, the voluntariness of a juvenile's statement is judged according to the totality of the circumstances." *Pima County Juvenile Action No. 97036–02,* 164 Ariz. 306, 311, 792 P.2d 769, 774 (App.1990). A confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence...." *Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). "A confession is rendered involuntary as the result of a promise if two requirements are met: first, there must be an express or implied promise, and second, the defendant must rely on the promise in making the confession." *Amaya–Ruiz,* 166 Ariz. at 165, 800 P.2d at 1273. We will not disturb the juvenile court's admission of a confession absent clear and manifest error. *Id.* at 164, 800 P.2d at 1272.

Both the juvenile and his mother testified that the officer threatened him with jail if he did not tell the truth. The juvenile also testified that if the officer had not threatened him he would not have admitted stealing the motorcycles but instead would have lied to the officer. The officer denied that he made any threats or promises. Thus,

the critical issue is whether the officer told the juvenile that, if he did not tell the truth, he would have to go to jail. At the suppression hearing, counsel for the juvenile asked the court for a clarification on whether the juvenile had been threatened with going to jail. The commissioner responded:

My understanding, [is] that there was not a specific threat of incarceration. And that any insinuations that may have arisen in the course of the conversation were not so significant as to render your client's statement involuntary.... [W]hile I certainly don't condone a police officer ever lying to a suspect in order to obtain information, by the same token your client specifically indicated that if it hadn't been for the police officer saying those things, he would have lied to the police officer. Not that he would have remained silent, not that he felt compelled to say something to the police officer. He would have talked to the police officer anyhow. He just would have lied, and there is no constitutional protection that allows a suspect to lie when being questioned.

The commissioner's ruling is, at best, ambiguous. He said he did not find a *specific* threat of incarceration. This suggests that the commissioner believed that *some* threat was made, a suggestion which is enhanced by the commissioner's reference to an "insinuation" which he found to be insignificant. If the commissioner found that any threat or promise was made, however slight, he should have suppressed the statement. *See Malloy v. Hogan,* 378 U.S. at 7, 84 S.Ct. at 1493.

There is another problem with the commissioner's ruling. It appears that the principal justification for the ruling was the commissioner's belief that the juvenile did not have a right to lie. The Fifth Amendment protects against *any* coerced statements, regardless of their truthfulness. *State v. Hudgens,* 102 Ariz. 1, 4, 423 P.2d 90, 93 (1967). The question is not whether the juvenile had a right to lie, but whether his statement was the result of a threat or promise.

We remand this case to the juvenile court with directions to make a specific finding whether the juvenile and his mother on the one hand, or the officer on the other, told the truth about the threat of jail. If the court accepts the juvenile's version, the statements and the evidence which flowed from them should be suppressed and the finding of delinquency set aside. If the state has untainted evidence, it may proceed against the juvenile anew. If the court accepts the officer's version, it may affirm the finding of delinquency.

EHRLICH, P.J., and CONTRERAS, J., concur.