930 P.2d 350 (1997)
84 Wash.App. 832
The STATE of Washington, Respondent,
v.
D.R., Appellant.
No. 14761-4-III.
Court of Appeals of Washington, Division 3, Panel Two.
January 30, 1997.
*351 Paul J. Wasson, Spokane, for Appellant.
Charles S. Richens, Deputy Prosecuting Attorney, Ephrata, for Respondent.
THOMPSON, Judge.
D.R. appeals his juvenile conviction for first-degree incest, RCW 9A.64.020(1). His primary contention on appeal is that the trial court erred in admitting statements he made to a police officer in the assistant principal's office at his school. We agree and reverse.
D.R., a 14-year-old eighth-grader, was charged with engaging in sexual intercourse with his 13-year-old sister, M.R. During the trial, the State presented the testimony of J.K., who said he had seen D.R. and M.R. having what he believed to be sexual intercourse in June or July of 1994.
The State also presented the testimony of Sheriff's Detective Dave Matney, who interviewed D.R. the next September in the assistant principal's office at the child's school. A social worker and the assistant principal also were present during the interview. Detective Matney was dressed in plain clothes; his gun was not visible. Detective Matney told D.R. he did not have to answer questions, but he did not give D.R. the Miranda[1] *352 warnings because he concluded the child was not in custody. The detective told D.R. he and the social worker had spoken to M.R. earlier. At the time of the interview, Detective Matney viewed D.R. as the "focus subject of the investigation." The detective conceded that his questions were "leading," and that he may have told D.R.: "We know already because [M.R.] told us."
D.R. testified he was summoned to the assistant principal's office, where Detective Matney showed him his badge and told him he was not required to answer questions. D.R. said the detective did not tell him he was free to leave, nor did he believe he was free to leave, based in part on his previous experience in the assistant principal's office. He testified the detective confronted him by saying, "[W]e know you've been havin' sexual intercourse with your sister...." D.R. also testified that at the time he did not know what incest was, and he did not know it was illegal for him to engage in sexual intercourse with his sister.
The trial judge concluded that, although he was a "little concerned about [the] coercive environment" of the interview, D.R. was not in custody because "he did not even feel that he was talking about criminal violations. May be [sic][he] could get in trouble with the principal or somebody but not the law." Detective Matney then was permitted to testify that D.R. had admitted having consensual sexual intercourse with M.R. between December 1993 and June 1994.
D.R. denied making the statements to Detective Matney, and denied having intercourse with M.R. He testified it was J.K. who was having intercourse with M.R., and that he interrupted them.
The trial court found it was clear there was an act of sexual intercourse involving M.R. that day, and the only factual question was whether D.R. or J.K. was involved. The court found J.K.'s testimony credible, and found D.R. guilty of incest.
The dispositive issue is whether the trial court erred in admitting D.R.'s statements to Detective Matney. Miranda warnings are designed to protect a defendant's right not to make incriminating statements while in the potentially coercive environment of custodial police interrogation. State v. Harris, 106 Wash.2d 784, 789, 725 P.2d 975 (1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987); see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). The Miranda rule applies when "the interview or examination is (1) custodial (2) interrogation (3) by a state agent." State v. Post, 118 Wash.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992) (citing State v. Sargent, 111 Wash.2d 641, 649-53, 762 P.2d 1127 (1988)). Unless a defendant has been given the Miranda warnings, his statements during police interrogation are presumed to be involuntary. Sargent, 111 Wash.2d at 647-48, 762 P.2d 1127.
It is undisputed that Detective Matney was a state agent, that he interrogated D.R., and that the detective did not give the child the Miranda warnings. The question therefore is whether D.R. was in custody for Miranda purposes during Detective Matney's questioning.
The Miranda safeguards apply "as soon as a suspect's freedom of action is curtailed to a `degree associated with formal arrest.'" Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)). Whether a defendant was in custody for Miranda purposes depends on "whether the suspect reasonably supposed his freedom of action was curtailed." State v. Short, 113 Wash.2d 35, 41, 775 P.2d 458 (1989) (citing State v. Watkins, 53 Wash.App. 264, 274, 766 P.2d 484 (1989)); see Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151 ("[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."). It thus is irrelevant whether the police had probable cause to arrest the defendant, Harris, 106 Wash.2d at 789-90, 725 P.2d 975 (citing Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151-52); whether the defendant was a *353 "focus" of the police investigation, Beckwith v. United States, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616-17, 48 L.Ed.2d 1 (1976); whether the officer subjectively believed the suspect was or was not in custody, Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151-52; or even whether the defendant was or was not psychologically intimidated, Sargent, 111 Wash.2d at 649, 762 P.2d 1127.
Whether there was probable cause to arrest D.R. is not a factor in the analysis, nor is it relevant that Detective Matney believed D.R. was not in custody or that D.R. subjectively believed he was free to leave or even understood the potential consequences of his conversation. The sole question is whether a 14-year-old in D.R.'s position would have "reasonably supposed his freedom of action was curtailed." Short, 113 Wash.2d at 41, 775 P.2d 458.
Two Oregon decisions address the issue raised here in similar circumstances. In State ex rel. Juvenile Dep't v. Killitz, 59 Or.App. 720, 651 P.2d 1382 (1982), a junior high school student was summoned to the principal's office, where an armed, uniformed police officer questioned him in the presence of the school principal. Killitz, 651 P.2d at 1383. Neither the officer nor the principal "said or did anything to dispel the clear impression communicated to defendant that he was not free to leave." Id. at 1384. Because the student would have been subject to the usual school disciplinary measures if he had not come to the office, and did not know that he would be questioned by a police officer, the court found he did not come to the office voluntarily. Id. The court concluded the interrogation was custodial. Id.
In State ex rel. Juvenile Dep't v. Loredo, 125 Or.App. 390, 865 P.2d 1312 (1993), a junior high school student similarly was summoned to appear at the principal's office, where he was interviewed alone by a plainclothes police officer whose gun was hidden from view. Loredo, 865 P.2d at 1313. The officer showed the child his badge and asked if he could talk with him. Id. The officer told the child he was not under arrest, could leave if he wanted to, and did not have to answer questions. Id. at 1313-14. Concluding the Miranda warnings were not required by state or federal law in these circumstances, the court observed:
Given that the school setting is more constraining than other environments, it is especially important that police interviews with children, when carried out in that setting, are conducted with due appreciation of the age and sophistication of the particular child. An interview that would not be "compelling" for an adult might nonetheless frighten a child into believing that he or she was required to answer an officer's questions. Accordingly, special precautions should be taken to ensure that children understand that they are not required to stay or answer questions asked of them by a police officer.
Here, the officer informed [the] child that he was not under arrest, did not have to speak and could leave if he wanted to. The officer clearly made an effort to be unimposing in dress and demeanor. [The c]hild is 13 years old and in junior high school. The interview environment was familiar to him. Although he had never been interviewed by a police officer, [the] child possessed considerable experience with the rules regarding interviews in the principal's office.... Accordingly, no Miranda warnings were required and the juvenile court did not err in denying child's motion to suppress.
Loredo, 865 P.2d at 1315 (citations and footnote omitted).
The facts of Loredo are strikingly similar to those in this case. The most significant difference is that D.R. was not told he was free to leave, a factor on which the Oregon court relied heavily in both Loredo and Killitz. We agree this factor is significant, and conclude that D.R. was in custody, in light of Detective Matney's failure to inform him he was free to leave, D.R.'s youth, the naturally coercive nature of the school and principal's office environment for children of his age, and the obviously accusatory nature of the interrogation. Detective Matney was required to formally advise D.R. of his rights under Miranda, and the trial court erred in admitting D.R.'s inculpatory statements.
*354 A court's error in admitting a defendant's statement in violation of Miranda is harmless only "if the untainted evidence alone is so overwhelming that it necessarily leads to a finding of guilt." State v. Ng, 110 Wash.2d 32, 38, 750 P.2d 632 (1988) (citing State v. Guloy, 104 Wash.2d 412, 426, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986)); see State v. Reuben, 62 Wash.App. 620, 626-27, 814 P.2d 1177, review denied, 118 Wash.2d 1006, 822 P.2d 288 (1991).
The only other evidence of incest[2] in this case is the testimony of J.K., who was not able to verify that he witnessed penetration. This evidence is not overwhelming, and certainly does not necessarily lead to a finding of guilt. The error was not harmless. The appropriate remedy is reversal and remand for entry of an order of suppression. See State v. Valdez, 82 Wash.App. 294, 298, 917 P.2d 1098, review denied, 130 Wash.2d 1011, 928 P.2d 416 (1996). This conclusion makes it unnecessary to address other issues in this appeal.
The conviction is reversed and the case is remanded.
SCHULTHEIS, Acting C.J., and MUNSON, J. Pro Tem., concur.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). A juvenile has the same rights against self-incrimination as an adult. See RCW 13.40.140(8).
[2] RCW 9A.64.020(1) provides:

"A person is guilty of incest in the first degree if he engages in sexual intercourse with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood." Sexual intercourse "has its ordinary meaning and occurs upon any penetration, however slight." RCW 9A.44.010(1)(a); RCW 9A.64.020(5).